UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JIAN Q. CHEN,<br><br>   Petitioner,<br><br>   v.<br><br>LAURA HERMOSILLO et al.,<br><br>   Respondents. | CASE NO. 2:26-cv-00067<br><br>ORDER GRANTING HABEAS PETITION |

## 1. INTRODUCTION

On June 10, 2025, Immigration and Customs Enforcement (ICE) arrested and detained Petitioner Jian Qin Chen, a Chinese citizen, when he appeared at his regularly scheduled immigration check-in. Dkt. No. 1. On January 7, 2026, Chen filed a Petition for a Writ of Habeas Corpus, arguing that his detention violates due process because there is no significant likelihood of removal in the reasonably foreseeable future. The Court agrees, and for the reasons below, GRANTS Chen's petition and orders his immediate release.

ORDER GRANTING HABEAS PETITION - 1

## 2. BACKGROUND

Petitioner Jian Qin Chen is a Chinese citizen and Colorado resident currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 ¶ 7. Chen initially entered the United States in 1992. Dkt. No. 6 at 3. Chen is married to a lawful permanent resident and has three children, all of whom are United States citizens. *Id.* ¶ 22. Chen has no criminal history. Dkt. No. 8-2 at 3.

In 1992, Chen entered the United States without a valid travel document, and in 1994, an immigration judge denied his asylum application and ordered his removal. Dkt. No. 9 at 1; Dkt. No. 7 ¶ 6. Chen was detained from September 29, 2010, through January 19, 2011. During that time, ICE submitted a travel document request ("TDR") to the Chinese consulate on November 9, 2010, and followed up at least three times, but China did not issue a travel document. Dkt. No. 7 ¶¶ 13–14. ICE then released Chen on an Order of Supervision ("OSUP"). Dkt. No. 9 at 1.

In 2015, Chen was issued a revised OSUP, maintaining the reporting requirements and other conditions on his release. Chen complied with the terms of his OSUP, including annual check-ins with ICE, for approximately a decade. Dkt. No. 1 ¶ 21. On June 10, 2025, during his annual immigration check-in, Chen was taken into custody again. Dkt. No. 1. ¶ 9. The Government did not provide Chen with any written notice explaining the basis for his detention. *Id.* ¶ 28.

Chen's daughter submitted a custody redetermination request on his behalf in late 2025, which included evidence of his good moral character, family ties, and community ties. ICE never responded. Dkt. No. 10 ¶ 4.

The Government asserts that on January 7, 2026—the same day Chen filed his habeas petition— ICE's Enforcement and Removal Operations ("ERO") headquarters approved a TDR for Chen. Dkt. No. 6. Relying on a declaration by Deportation Officer Anthony Rosa, the Government asserts that Chen's removal to China is in the reasonably foreseeable future. The pertinent portion of Rosa's declaration reads:

> I have been in touch with ERO HQ and have been informed that there is significant likelihood of removal in the reasonably foreseeable future to China. It is my understanding that China is cooperating with the US government and is issuing TDs for individuals ordered removed from the United States such as Petitioner.

Dkt. No. 7 ¶ 21.

### 3. DISCUSSION

**3.1   Legal standard.**

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is

unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**3.2    Chen's detention violates due process.**

Chen argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id.* at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that

showing." *Id.* Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Chen is detained under 8 U.S.C. § 1231(a)(6), which authorizes continued detention after the 90-day removal period for certain categories of noncitizens or release under conditions of supervision. *See Zadvydas*, 533 U.S. at 682. His removal order became final on February 16, 1994—more than 32 years ago. He was detained for a period in 2010 and 2011, during which the Government unsuccessfully sought travel documents from China. And he has been detained again since June 10, 2025. The six-month presumptively reasonable period has expired. The Government concedes that Chen's detention has exceeded the six-month period established in *Zadvydas*.

This prolonged history matters under *Zadvydas*'s sliding scale. After 32 years without removal—including one prior detention during which the Government attempted and failed to obtain travel documents—the Government's burden to justify continued detention is heightened, and what counts as the ""reasonably foreseeable future" has correspondingly shrunk. The Government cannot meet that heightened burden with the same type of conclusory assurances that have proven unreliable for over three decades.

Chen has shown there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future. First, Chen's TDR has not yet been sent to the Chinese consulate. ICE is still "preparing to send" Chen's TDR. Dkt. No.

7 ¶ 20. The Government highlights the fact that the TDR packet has been "review[ed] and approv[ed]" by the "ERO HQ," an internal division of ICE. *Id.* ¶ 20. But between the day Chen was taken into custody on June 10, 2025, and January 7, 2026, when the TDR was sent to an internal division within ICE, no meaningful action was taken by the Government to effectuate Chen's removal. *See* Dkt. No. 7. In fact, the Government waited until the day Chen filed his habeas petition on January 7, 2026, to send the TDR to ICE's ERO division.

Second, Chen has shown that removal is not likely any time soon because historically, both in his case and for Chinese nationals generally, removal to China from the United States is not a straightforward process. For example, DO Rosa concedes in his declaration that there have been three previous failed attempts in 2010 and 2011 to secure Chinese travel documents for Chen. Dkt. No. 7 ¶¶ 13–14. The Government has been unsuccessfully attempting to remove Chen for more than a decade without any sign of cooperation from China. And there is no suggestion of changed circumstances in China's amenability to accepting repatriated Chinese nationals. Indeed, Chen provides evidence of the opposite. Since at least 2021, China has continued a policy of refusing to repatriate Chinese nationals with final removal orders from the United States. Dkt. No. 9 at 4. In short, Chen has shown that the Government is not likely to remove him within the reasonably foreseeable future.

The Government has not rebutted Chen's showing. The Government concedes that the TDR has not been sent to the Chinese consulate and that ICE is "preparing to send" the packet and "actively working to obtain a travel document" to remove

ORDER GRANTING HABEAS PETITION - 6

Chen. Dkt. No. 6 at 7; Dkt. No. 7 ¶ 20. Under *Zadvydas*, the Government bears the burden of providing affirmative evidence that removal is reasonably foreseeable—not merely conclusory statements that "ICE is actively working" on the matter.

The evidentiary deficiencies in the Rosa Declaration are significant. DO Rosa does not attest to any facts within his personal knowledge regarding China's willingness to issue travel documents. Instead, he relays that he "ha[s] been in touch with ERO HQ and ha[s] been informed" that removal is significantly likely. Dkt. No. 7 ¶ 21. But Rosa does not identify who at ERO HQ provided this information, that person's title, their familiarity with Chen's case, or their basis for believing China will cooperate. The unnamed HQ official could have submitted a declaration but did not. Moreover, the Government has not provided any timeframe for when it will send Chen's TDR packet to the Chinese consulate or how long it will take for the Chinese consulate to verify Chen's identity, his citizenship, and to decide whether China will accept Chen for repatriation. The Government cannot meet its burden on rebuttal through such layered hearsay.

At most, the Government has proved that "there is at least some possibility" that China, "at some point" might accept Chen. *Abubaka v. Bondi*, No. 25-cv-1889-RSL, 2025 WL 3204369, at *5 (W.D. Wash. Nov. 17, 2025) (quoting *Nguyen v. Scott*, 796 F. Supp. 3d at 725 (W.D. Wash. 2025)). But as other courts in this district have found, "[t]hat is not the same as a significant likelihood that [the petitioner] will be accepted in the reasonably foreseeable future." Id. (quoting *Nguyen*, 796 F. Supp. 3d at 725); *see also Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (Government failed to meet Zadvydas standard on rebuttal because it provided "no

ORDER GRANTING HABEAS PETITION - 7

substantive indication regarding how or when it expect[ed] to obtain the necessary travel documents" to remove the petitioner). Ultimately, no evidence supports the Government's assertion that it can remove Chen to China in the reasonably foreseeable future.

Finally, the record contains no evidence that Chen poses a flight risk or danger to the community—the traditional justifications for detention. Chen has no criminal history, and he has complied with his OSUP. He has deep family ties in the United States, including three U.S. citizen children and a spouse who is a lawful permanent resident. Where, as here, there is no meaningful prospect of removal and no evidence of flight risk or dangerousness, continued detention serves no legitimate purpose.

Because there is no significant likelihood of removal in the reasonably foreseeable future, Chen's continued detention is no longer authorized by statute and violates due process. He must be released.

## 4. CONCLUSION

The Court GRANTS Chen's Petition for Writ of Habeas Corpus, and ORDERS as follows:

1. Respondents must RELEASE Petitioner from custody immediately, subject to the conditions of his prior OSUP.

2. Respondents may not re-detain Petitioner without providing written notice of the basis for proposed re-detention in advance and a meaningful opportunity to respond, except as authorized under 8 C.F.R. § 241.13(i)(1)–(2). The mere passage of time or resubmission of the same

travel document request that was previously unsuccessful does not constitute changed circumstances warranting re-detention.

3. Within SEVENTY-TWO (72) hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 30th day of January, 2026.

Jamal N. Whitehead
United States District Judge